IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ERIC DONALD STROUD,                    )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Case No. 3:09-0895
                                       )        Judge Trauger
CONNOR CONCEPTS, INC.,                 )
                                       )
        Defendant.                     )
                                       )

## MEMORANDUM

Pending before the court is the defendant's Motion to Dismiss for Failure to State a

Claim (Docket No. 5) and the plaintiff's Motion for Leave to Amend and Restate Complaint

(Docket No. 11).  For the reasons discussed herein, the defendant's motion will be denied, and

the plaintiff's motion will be granted.


## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Eric Stroud, is a chef and a resident of Indiana.[1]  The defendant, Connor

Concepts, Inc., is a Tennessee corporation and is the parent company of the plaintiff's former

employer, The Chop House restaurants.  This dispute arises out of the circumstances of Stroud's

termination from The Chop House.

The plaintiff had been an employee of The Chop House for approximately seven years

prior to the events that gave rise to this dispute.  There are apparently several "Chop House"

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

Case 3:09-cv-00895   Document 14   Filed 12/02/09   Page 1 of 18 PageID #: 52

locations, but the plaintiff worked at the Murfreesboro, Tennessee location.  By August 2007, the plaintiff had achieved the position of Assistant Head Chef at the restaurant, and he was widely regarded as an exemplary employee.

Around this time, the defendant's management staff offered the plaintiff the position of Head Chef at a new Chop House restaurant that the defendant was opening in Hendersonville, Tennessee.  At the time of the offer, the plaintiff expressed strong reservations about accepting the position due to the stress of the position, the increased responsibility and the skill set required.  However, at the continued urging of the defendant's representatives, the plaintiff accepted the Head Chef position.

In October 2007, the plaintiff began working at the Hendersonville "Chop House" location, preparing for its scheduled November 2007 opening.  During this preparatory phase, the plaintiff began to experience a great deal of stress and anxiety.   He was not sleeping well or taking proper care of his health.  Consistent with this, he became increasingly argumentative and hostile toward others.  Later in October 2007, the plaintiff spoke with his supervisors and requested that he be allowed to return to his former position at the Murfreesboro location. However, for reasons that are unclear at this point, the parties agreed that the plaintiff would remain at the Hendersonville location as Head Chef.

By the time of the restaurant's opening in November 2007, it was clear to all concerned that the plaintiff was "not faring well" in his new position.  (Docket No 1 at 3.)  On Thanksgiving Day, November 22, 2007, the plaintiff informed his supervisor that he needed a day off and that the job was seriously affecting his health.  The plaintiff took the next day,

2

November 23, 2007, off from work.

The day after that, November 24, 2007, the plaintiff met with the defendant's Area Regional Manager, Brent West. West informed the plaintiff that he was perceived by his fellow employees in Hendersonville as "menacing, intimidating, and dangerous." (*Id.*) In light of this, West advised the plaintiff that he would have to take some additional time off from work for his health. West identified this mandated time off as Family and Medical Leave Act ("FMLA") leave. West urged the plaintiff to get proper care for his anxiety issues and mental troubles, and he told the plaintiff that "the door will always be wide open for you at Connor Concepts." (*Id.*)

The plaintiff's downward mental spiral continued, however, and, on November 30, 2007, just six days into his leave, the plaintiff was hospitalized for mental health reasons at Vanderbilt University Medical Center in Nashville, Tennessee. The plaintiff remained hospitalized at Vanderbilt until December 10, 2007. Upon his release from Vanderbilt, the plaintiff traveled to his parents' home in Indiana, where he continued to have "tremendous difficulty" coping with these mental health issues. (*Id.*) Indeed, on December 21, 2007, the plaintiff was hospitalized again, this time at Parkview Behavioral Health Hospital in Indiana. The plaintiff remained hospitalized at Parkview until January 2, 2008. Upon his release from Parkview, the plaintiff was advised by his physician not to return to work for another four to five weeks.

On January 2, 2008, the day that the plaintiff was released from Parkview, the plaintiff telephoned West and informed him of the relatively dramatic events that had transpired since they had last talked in late November. The plaintiff also advised West that he could not return to work for another four to five weeks, per his doctor's orders.

3

The plaintiff and West also discussed the plaintiff's FMLA leave. West advised the plaintiff that the defendant's corporate office had sent the necessary FMLA forms to the plaintiff but had not received the completed paperwork back from the plaintiff. This included the "medical certification" to be filled out by the plaintiff's physician. The plaintiff claimed never to have seen the FMLA paperwork and, therefore, the FMLA paperwork was re-sent by the corporate office following the plaintiff's conversation with West. West urged the plaintiff to return the medical certification as soon as possible.

Over the next several weeks, the plaintiff kept in touch with West about his progress. Indeed, between January 14, 2008 and February 11, 2008, the plaintiff phoned West on at least five separate occasions to report on how he was faring. During this period, the defendant continued to "carry" the plaintiff as an employee and the defendant continued to pay the plaintiff's health insurance premiums. (Docket No. 1 at 4.) At some point during this period, the plaintiff contacted his supervisors and reiterated his request to be allowed to return to his old job at the Murfreesboro location. This time, the defendant granted the request, and the plaintiff planned on returning to that job once he was medically cleared to do so.

On February 11, 2008, the defendant received the required medical certification from the plaintiff's physician. The certification cleared the plaintiff to return to work. For reasons that are not stated in the Complaint, after receiving the medical certification, West attempted to reach the plaintiff's physician by phone but was apparently unsuccessful, as he also phoned the plaintiff's father to inform him that he had attempted to contact the plaintiff's physician.

The date of the plaintiff's attempted return to work is not stated in the Complaint, but,

according to the plaintiff's briefing in response to the pending Motion to Dismiss, the plaintiff attempted to return to work on February 11, 2008, that is, the date of his medical clearance. (Docket No. 10 at 6.) However, according to the Complaint, "[w]hen Plaintiff arrived at the Murfreesboro location to return to work he was informed by the manager at that location that he was no longer employed by Defendant." (Docket No. 1 at 5.)

## ANALYSIS

The plaintiff asserts that his termination violated his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C § 2601 *et seq.*, and under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The defendant has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and the plaintiff has moved to amend the Complaint to add additional support for the ADA claim. (Docket No. 11.)

## I.      Standard of Review (Motion to Dismiss)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema*

5

*N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

## II.    The Plaintiff's Claims

### A.    FMLA

The FMLA provides that an eligible employee (such as the plaintiff) is entitled to up to twelve weeks of medical leave in a year in the event of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 553-54 (6th Cir. 2006)(quoting 29 U.S.C. § 2612(a)(1)(D)). To gain the benefit of the Act, the employee must abide by certain statutory conditions that govern providing notice, medical information, and updates to the employer. *Id.* at 554 (citing 29 U.S.C. § 2613 and 29 U.S.C. § 2614).

Assuming that the employee has complied with the relevant statutory conditions, the Sixth Circuit recognizes "two distinct theories for recovery under the FMLA," that is, the "entitlement" or "interference" theory and the "retaliation" or "discrimination" theory. *Id.* at 555-56 (internal citation and quotation omitted). An "entitlement" action is premised on the

6

argument that the employer interfered with the employee's FMLA rights and thereby "denied the employee FMLA benefits to which she was entitled." *Id.* at 556 (citing 29 U.S.C. § 2615(a)(1); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). A discrimination or retaliation action is premised on the argument that the employer, knowing that the employee was validly exercising her FMLA rights, took an adverse employment action against the employee because of that exercise of rights. *Id.*

The defendant offers three arguments as to why the plaintiff has failed to state a claim under the FMLA: (1) that the plaintiff did not have a right under the FMLA to return to his *former* job; (2) that the Complaint demonstrates that the plaintiff did not comply the medical certification requirements of the FMLA; and (3) that the plaintiff did not return to work within the twelve-week leave period allowed by the FMLA. (Docket No. 6 at 4-7.) These arguments are unavailing at this early stage of the litigation.

### 1.      Reinstatement to the plaintiff's "former" job

The defendant recognizes that generally the "FMLA provides that an employee is entitled to reinstatement to his 'former position or an equivalent position'" upon the employee's return from FMLA leave. (Docket No. 6 at 4 citing 29 U.S.C. § 2614(a)(1)). That said, the FMLA does not confer any rights on the employee other than those rights "to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). The defendant contends that, under this provision, the plaintiff was only entitled to return to work at the position that he held at the time leave began, that is, the Head Chef position in Hendersonville and that "returning to the Assistant Head Chef position in Murfreesboro was not

7

a benefit the FMLA would provide." (Docket No. 6 at 5.)

Therefore, under the defendant's interpretation of the statute, even though the plaintiff was re-assigned to the Murfreesboro location by his employer during the course of his FMLA leave, the plaintiff, in order to obtain relief under the FMLA, would have had to attempt to return to the position from which he had been transferred, simply because that happened to be the position he held when he started his FMLA leave. The defendant provides no authority supporting such a punitive interpretation of the FMLA.

Indeed, neither of the two (non-controlling) cases cited by the defendant stand for the proposition that an employee loses his FMLA rights in this context; rather, both of those cases concern a situation in which the court found that an employee did not have a viable FMLA claim because the evidence showed that the employer had made the decision to terminate the plaintiff prior to the plaintiff's taking FMLA leave, which is clearly not the case alleged in the Complaint. *See Patterson v. Alltel Information Servs., Inc.*, 919 F. Supp. 500, 505 (D. Maine 1996); *Ahmarani v. Sieling & Jones, Inc.*, 211 F. Supp.2d 658, 660 (D. Md. 2002).

In *Killian*, a Sixth Circuit case, the plaintiff took FMLA leave and was terminated while on that leave. 454 F. 3d at 553. Citing Section 2614(a), the court noted that not only was the plaintiff not restored to her "former position or to an equivalent position," she "was not restored at all." *Id.* at 556. That is, the employer's failure to reinstate the plaintiff to any position at the company following the FMLA leave was a basis for a valid FMLA claim. *Id.*

As can be seen from *Killian* and from the lack of case law supporting the defendant's position, Section 2614(a) does not operate as a trap for unwary employees who do not seek to

8

return to the exact position that they left when they took leave.  Here, the Complaint allegations are that the defendant did not honor its FMLA obligations because it prevented the plaintiff from returning to the company following FMLA leave.  This is clearly a valid basis for an FMLA claim, and, therefore, the defendant's argument here is without merit.

### 2.    Compliance with medical certification requirements

Next, the defendant argues that the plaintiff's delays in returning the required medical certification are fatal to the FMLA claim.  (Docket No. 6 at 5-6.)  The defendant calculates that, because the plaintiff's FMLA leave began with his first missed day of work on November 23, 2007, and because the re-sent medical certification was not provided to the defendant until February 11, 2008, eighty-one days passed between the date that the leave began and the date that the required paperwork was finally returned by the employee's physician to the employer. (*Id.*)  In light of this timeline, the defendant argues that "Plaintiff's overall delay and, especially the forty day delay after being given a second chance to provide his medical certification, relieved Defendant from any obligation under the FMLA."  (*Id.* at 6.)  Again, the defendant's position is unsupported by the law.

Section 2613(a) of the FMLA does state that an employer may request that the employee seeking FMLA leave provide the employer with a medical certification from the employee's health care provider, indicating that the leave is necessary.  29 U.S.C. § 2613(a).  The statute also states that this medical certification shall be provided by the employee in a "timely manner." *Id.*

While the defendant contends that "[a]n employee who fails to comply with the

9

certification requirements of the statute forfeits the benefits of the FMLA," the defendant

provides no law that demonstrates that an employee who is merely delayed in returning the

certification somehow loses all protection afforded by the FMLA. (Docket No. 6 at 5.) Indeed,

in *Brady v. Potter*, 273 Fed. Appx. 498 (6th Cir. 2008), which is the sole case cited by the

defendant in support of its position here, the Sixth Circuit determined that the plaintiff

"essentially forfeited her ability to receive FMLA benefits" because the plaintiff repeatedly

"refused to provide *any* medical documentation" in support of her request for leave. *Id.* at 504

(emphasis added).

      The defendant also cites two Code of Federal Regulations (CFR) provisions in support of

this "forfeiture of rights" argument, arguing that these provisions establish fifteen days as the

amount of time that an employee is allotted to return the required medical certification. (Docket

No. 6 at 5.) While these regulations do indicate that fifteen days should be a guide in

establishing timeliness, these provisions also indicate that the time frame is flexible and an

employee has a duty to return the certification "as soon as reasonably possible under the

particular facts and circumstances," given the employee's medical condition. 29 C.F.R.

825.305(b); 29 C.F.R. 825.311(b) (versions effective at the time of the relevant events).

      Moreover, it is clear that, under Sixth Circuit law, an employer's option in the case of a

tardy medical certification is not termination, but to delay the continuation of the employee's

FMLA leave. In *Killian*, for instance, it was suggested that the plaintiff was not entitled to relief

under the FMLA because the plaintiff had failed to return the medical certification in a timely

manner. 454 F.3d at 555. While the court concluded that the plaintiff had complied with the

certification requirements, the court went on to state that, "even if Killian had failed to provide the certification in a timely fashion, [the employer's] remedy under the regulations was [] delayed leave, not termination."  *Id.*

Plainly, under controlling authority, an employer cannot use the basic fact of a delay in the return of the medical certification to completely absolve itself of potential liability under the FMLA.  Therefore, the defendant's second argument is without merit.

### 3.    Return to work within the twelve-week period

In its final challenge to the FMLA claim here, the defendant argues that the "Plaintiff does not even allege that he attempted to return to work within twelve weeks, the maximum period allowed under the FMLA."  (Docket No. 6 at 6.)  There is no question that an employee is entitled to a maximum of twelve weeks of FMLA leave in a year, and, the defendant argues, the Complaint indicates that the plaintiff exceeded that amount prior to his termination, and, therefore, his FMLA claim fails.  (Docket No. 6 at 6-7.)

The Complaint is somewhat unclear on the timing of the pertinent events.  In paragraph 29, the plaintiff alleges that he was cleared to return to work on February 11, 2008, which is between eleven and twelve weeks after the FMLA leave would have begun.  The defendant contends that the plaintiff "does not plead" when exactly he attempted to return to work in Murfreesboro, but "[t]his obviously occurred after February 11, 2008 but from the face of the Complaint it is impossible to tell how long after February 11, 2008 this allegedly occurred." (Docket No. 6 at 7.)

There is no indication in the Complaint that the plaintiff's return to work "obviously"

occurred after February 11, 2008, and certainly no indication that the return to work happened outside of the twelve-week time frame. Indeed, the logical reading of the Complaint is that the plaintiff attempted to return to work very shortly after he was medically cleared on February 11, 2008. (Docket No. 1 at 4-5.) Indeed, it is hardly "obvious" that an employee, who had not worked in more than eleven weeks, would remain idle, not working, for days after being medically cleared to return to work. In response to the defendant's motion, the plaintiff has clarified, consistent with the natural reading of the Complaint, that he attempted to return to work on February 11, 2008, the date of medical clearance, well within the twelve-week time frame. (Docket No. 10 at 6.)

As is clear from the discussion above, the defendant's arguments in support of its Motion to Dismiss the FMLA claim are without merit, and, therefore, this claim will survive the defendant's motion.

### B.     ADA

The defendant also claims that the plaintiff has failed to state a claim under the ADA. (Docket No. 6 at 7-13.) In the Complaint, the plaintiff alleges that the defendant perceived him as "menacing, erratic and dangerous" and, on that basis, put him on medical leave. (Docket No. 1 at 6.) Despite taking the medical leave and receiving treatment for his condition, the plaintiff alleges that the defendant's continuing perceptions of the plaintiff as mentally unbalanced caused the defendant to terminate him. (*Id.*)

As indicated, the Complaint does not allege that the plaintiff's troubles amount to an actual physical or mental disability under the ADA, but rather that the plaintiff was "regarded

12

as" having a disability by his employer. (*Id.*) Ordinarily, to qualify as "disabled" under the ADA, one must allege a physical or mental impairment that has a "substantially limit[ing]" effect on a "major life activity." *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 491-92 (6th Cir. 2008). However, an employee who does not actually have such an impairment can still be considered "disabled" under the ADA based on the "regarded-as-disabled" theory or prong.

The "regarded as" prong protects employees who are "perfectly able to perform a job but are rejected because of the myths, fears and stereotypes associated with disabilities." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008)(internal citation and quotation omitted).[2] Individuals may be "regarded as" disabled either when an employer mistakenly believes that an unimpaired employee has a "substantially limiting" impairment or when the employer mistakenly believes that an actual impairment is "substantially limiting" when it is not. *Id.* Either way, the "regarded as" prong is premised on an employer's misconception. *Id.*

Establishing a "regarded as" disability claim, particularly in the natural case where the plaintiff alleges that the employer viewed the employee as "substantially limited" in the major life activity of "working," is "extraordinary difficult." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008).[3] This is because the issues are "imbedded almost entirely in the

_____

[2]As the defendant points out, this prong does not raise issues of "reasonable accommodation" that sometimes arise in ADA cases, because the individual asserting the claim is not actually sufficiently physically or mentally impaired to qualify as "disabled" and, therefore, does not need a "reasonable accommodation." *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999).

[3] The court recognizes the "ADA Amendments Act of 2008," in which Congress, effective January 1, 2009, explicitly overruled major Supreme Court decisions construing the ADA and established that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of

13

employer's state of mind" and because, to establish "substantial limitation," the plaintiff must show that the "employer regarded the employee as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* (internal quotation omitted). That is, "not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs." *Id.* All that said, when a plaintiff pursues a claim under the "regarded as" theory of disability, if the plaintiff can show that the defendant "regarded [him] as disabled and would not reinstate [him on that basis] . . . [the defendant] would be liable for discrimination under the ADA." *Workman*, 165 F.3d at 467.

The defendant argues that the plaintiff's "regarded as" disability claim is not "sufficiently pled." (Docket No. 6 at 8.) That is, the defendant contends that there is nothing in the pleadings that indicates that the defendant believed that the plaintiff had a disability that substantially limited a major life activity, as that term is defined in this context. (*Id.* at 9-11.) Also, the defendant argues that there is nothing in the pleadings that gives rise to the inference that the plaintiff was terminated or treated less favorably because of that false perception of disability – proof of which would be required to establish the disability discrimination claim here. (*Id.* at 11-12 citing *Macy v. Hopkins Co. Sch. Bd. of Education*, 484 F.3d 357, 365 (6th Cir. 2007)).

While the case law demonstrates that the standard for establishing this cause of action is

---

this Act." P.L. 110-325 § 4(A). The ADA amendments do not influence the court's analysis because the court is to apply the ADA law that was in place at the time the conduct complained of occurred. *Verhoff*, 299 Fed. Appx. at 492.

quite high and, therefore, the plaintiff will likely have a difficult time establishing the merits of his claim, such concerns are of little import at this point. *Swierkiewicz*, 534 U.S. at 514 (challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56."). The plaintiff's allegations, which center on the subjective state of mind of the defendant, are also particularly difficult to resolve at the motion to dismiss stage. *See Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001)(noting that questions of state of mind and motivation are often ill-suited for resolution by dispositive motion). Therefore, despite the plaintiff's eventual burden, at this stage, it must be remembered that the plaintiff need only state a "facially plausible" claim that the defendant regarded him as disabled and terminated him based on that misconception.

While the Complaint is perhaps not as clear as it could be, construing the Complaint in the light most favorable to the plaintiff, accepting its allegations as true, and drawing all reasonable inferences in favor of the plaintiff, the allegations do state a facially plausible claim under the "regarded as" disabled prong. As to the employer's perception of disability, the Complaint alleges that the employer was well aware of the plaintiff's severe, ongoing mental difficulties, and it is possible to infer from those allegations that the employer, particularly after reviewing the mental certification, could believe that the plaintiff had a mental illness that would "substantially limit" the plaintiff's ability to work, that is, substantially limit the plaintiff's ability to perform a broad class of jobs. Additionally, the Complaint strongly indicates that the plaintiff was terminated due to the circumstances surrounding his extended leave of absence from work; indeed, no other basis for termination is indicated by the Complaint. (Docket No. 1

15

at 6)("Defendant's perception caused it to discriminate against Plaintiff in the manner above.")

From these allegations, given the employer's feelings and misconceptions about the scope of the

plaintiff's impairment, a further reasonable inference can be drawn that the plaintiff was

terminated because of his employer's misconceptions about the severity of his mental illness.[4]

As the plaintiff has stated a valid claim under the FMLA and the ADA, the defendant's

Motion to Dismiss will be denied.

## III.    Motion for Leave to Amend

As noted above, the plaintiff has also filed a Motion for Leave to Amend and Restate

Complaint.  (Docket No. 11.)  The plaintiff states that "[t]he purpose[s] of the amendment"

would be to (1) "make a more definite statement regarding" the ADA claim, (2) "incorporate

new information . . . from the EEOC regarding Plaintiff's ADA charge," and (3) "refine the

language in the Complaint."  (Docket No. 11 at 1.)  While, at the time of filing this motion on

_____

[4]The defendant makes two additional, unavailing arguments.  First, the defendant
contends that the "Complaint does not indicate that Plaintiff has exhausted administrative
remedies," that is, the Complaint makes no mention of the plaintiff's receiving the required
"right to sue" letter from the EEOC prior to filing suit in this case.  (Docket No. 6 at 12.)  While
the Complaint does not mention the right to sue letter, attached to the plaintiff's response to the
defendant's motion is the right to sue letter, dated June 29, 2009.  (Docket No. 10 Ex. 1.)  The
plaintiff filed this lawsuit on September 25, 2009, within the 90-day period for filing a lawsuit
permitted by the right to sue letter.  (*See id.*)  The defendant also contends that the plaintiff's
claim for punitive damages under the ADA is not supported by the Complaint allegations.
(Docket No. 6 at 13.)  That is, the defendant argues that the Complaint only alleges that the
defendant's conduct was "intentional," but the Complaint does not allege that the defendant
acted with "malice or reckless indifference to the federally protected rights" of the plaintiff, as
will be required to establish a claim for punitive damages under the ADA.  (*Id.* citing *Summit v.
S-B Power Tool*, 121 F.3d 416, 423 (8th Cir. 1997)).  Plainly, from the Complaint allegation that
the conduct was "intentional," a reasonable inference can be drawn that the conduct was also
done with malice or with reckless indifference to the plaintiff's rights.  Only discovery and
additional fact-finding can determine whether the plaintiff's allegations have merit.

16

October 27, 2009, the plaintiff claimed that the proposed Amended Complaint could not be submitted because of "time constraints" and because certain documents were "still in transit from the EEOC," the plaintiff has failed to submit a proposed Amended Complaint in the intervening time period.[5]  (*Id.*)

In response, the defendant concedes that Federal Rule of Civil Procedure 15 dictates that "leave [to amend] shall be freely given when justice so requires."  (Docket No. 13 at 2 citing Fed. R. Civ. P. 15(a)).  That said, the defendant argues that the motion should be denied as futile. (Docket No. 13 at 2 citing *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005)(recognizing the futility of an amendment as one basis for denying a motion for leave to amend).  Indeed, the defendant argues that an Amended Complaint would not affect the allegedly fatally flawed FMLA claim and, while "[t]here is no way to determine exactly what Plaintiff intends to accomplish by amending the Complaint . . . it is extremely difficult to comprehend how Plaintiff can amend or clarify his allegations and overcome the glaring deficiencies in his claim for relief under the ADA."  (Docket No. 13 at 2.)

As discussed above, the court has determined, over the defendant's strong objections, that the plaintiff's ADA and FMLA claims may move forward as currently pled.  That said, as the plaintiff recognizes, the ADA claim especially could benefit from refinement, and the

_____

[5]Under the Federal Rules in place at the time, the plaintiff could have simply amended the Complaint "as a matter of course," as no "responsive pleading" was filed by the defendant. Fed R. Civ. P. 15(a)(1)(version in effect prior to December 1, 2009); *Youn v. Track, Inc.*, 324 F.3d 409, 416 (6th Cir. 2003)("a motion to dismiss is not a responsive pleading for the purposes of Rule 15(a)").  As the plaintiff elected not to do that, and, instead, sought leave to amend (at some future time) under Rule 15(a)(2), the court will review that request for leave under the appropriate legal standard.

plaintiff has suggested that it may add an additional theory of disability, which would be permissible. (Docket No. 10 at 7); *see also Workman,* 165 F.3d at 467 ("The ADA defines disability as (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) being regarded as having such an impairment. . . . The plaintiff can proceed to trial without deciding under which prong she is covered.")

As amending the Complaint here would not be futile, the plaintiff's Motion for Leave will be granted. However, in light of the plaintiff's ongoing failure to file a proposed Amended Complaint and in the interest of fairness, the plaintiff will be directed to file either (1) the Amended Complaint or (2) an explanation for any continued delay in filing within 10 days of the court's Memorandum and Order.[6]

## CONCLUSION

For the reasons discussed herein, the defendant's Motion to Dismiss will be denied, and the plaintiff's Motion for Leave to Amend will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

-

---

[6] Plaintiff's counsel is reminded that new "computing time" rules are in effect as of December 1, 2009. *See* Fed R. Civ. P. 6(a).

18